# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02357-PAB-MJW

RE/MAX, LLC,

        Plaintiff,

v.

QUICKEN LOANS INC.,

        Defendant.

## AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(2), with the written consent of opposing counsel, Plaintiff RE/MAX, LLC ("RE/MAX"), hereby submits this Amended Complaint against Defendant Quicken Loans Inc. ("Quicken Loans"), and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    RE/MAX is a Delaware limited liability company with its principal place of business at 5075 South Syracuse Street, Denver, Colorado 80237. None of the members of RE/MAX are citizens of Michigan. RE/MAX is engaged in franchising real estate brokerage offices, both domestically and internationally, and provides support and services to RE/MAX franchisees and sales associates affiliated with such RE/MAX franchisees. RE/MAX does not provide real estate brokerage services directly to consumers or in any other manner.

4247707

2. Quicken Loans is a Michigan corporation that maintains its principal place of business at 1050 Woodward Avenue, Detroit, Michigan. Quicken Loans is a lender that offers consumers residential mortgage loan products, along with other goods and services.

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2), as the parties herein are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper within the District of Colorado pursuant to U.S.C. § 1391(b)(2) by agreement of the parties in a forum selection clause, specifying that "any dispute" arising out of the agreement between the parties "shall be brought in a court of competent jurisdiction in the State of Colorado" and that all parties to the agreement "waive any argument or contention that such courts constitute an inconvenient forum," and because a substantial part of the events and omissions giving rise to the claims herein occurred in Colorado.

## BACKGROUND

5. These claims concern Quicken Loans' refusal to pay for general marketing services provided to Quicken Loans by RE/MAX pursuant to a written agreement between the parties as well as Quicken Loans' related breach of a non-disclosure agreement between the parties.

6. In early 2014, Quicken Loans approached RE/MAX concerning entering into a business relationship by which RE/MAX would provide Quicken Loans with certain services and opportunities to advertise and market Quicken Loans' services generally within the United States.

7. In February 2014, the parties entered into a Non-Disclosure Agreement (the "NDA") for the purpose of "facilitat[ing] discussions about, and the evaluation of, a potential

2

business relationship between the Parties," (i.e., the "Purpose of the Disclosure").  The parties agreed to share certain Confidential Information with each other on the condition that the party receiving such information would "disclose the Confidential Information only to those officers, directors, employees, consultants and advisors of the Receiving Party who need to know such information in order to carry out the Purpose of the Disclosure . . . ."

8. On July 9 and July 10, 2015, the parties entered into a Strategic Marketing Alliance Agreement (the "Agreement").  Generally, the parties agreed to enter a co-branding and marketing arrangement, in exchange for which Quicken Loans would pay RE/MAX certain monthly and annual flat fees, in no way tied to any response from the customers of RE/MAX franchisees or business derived by Quicken Loans from the Agreement.  Under the Agreement, no compensation or other thing of value was to be paid directly or indirectly to any RE/MAX real estate agent or real estate broker.  The term of the Agreement was four years from the effective date of the Agreement which was October 15, 2015.  The Agreement contained a forum selection clause which provided:  "In the event of any dispute arising out of this Agreement, the matter shall be brought in a court of competent jurisdiction in the State of Colorado.  All parties hereby submit to the personal jurisdiction of such courts and waive any argument or contention that such courts constitute an inconvenient forum."  The Agreement also expressly incorporated the NDA's confidentiality provisions.

9. On November 10, 2015, the parties entered into a First Amendment to Strategic Marketing Alliance Agreement, effective October 15, 2015 ("Amendment").

10. The Agreement and Amendment provided that RE/MAX would provide the following general marketing services for Quicken Loans, none of which are customized or directed to particular consumers, in return for fees to be paid by Quicken Loans:

3

a. Display Quicken Loans' logos on various sites in RE/MAX's Home Page Advertising, Mortgage Tools Advertising, and Intranet Webpage Advertising and the RE/MAX mobile site;

b. Market Quicken Loans at the monthly four-day training class for new and existing franchise owners and/or managers;

c. Advertise Quicken Loans, but not its loan products, in two print publications, one with over 80,000 readers and the other with over 100,000 readers;

d. Generally market Quicken Loans as a company at the annual RE/MAX Convention for RE/MAX real estate agents, which is not attended by consumers of real estate services, known as "R4," including e.g. the provision of at least six exhibit spaces, exhibitor badges, signage, and admission to convention social events;

e. Exclusive marketing opportunities at the R4 Convention, which is not attended by consumers of real estate services, including sponsorship of the Keynote Address;

f. General and exclusive marketing at the annual RE/MAX summer conference for RE/MAX broker/owners and managers, including the keynote address, two exhibit spaces, exhibitor name badges, signage, and tickets to all social events;

g. Provide attribution to Quicken Loans on the RE/MAX National Housing Report, which is made available for public distribution at least twelve times per year;

4

h. Provide Quicken Loans access to RE/MAX Web Roster of RE/MAX real estate agents and brokers, to enable Quicken Loans to provide information about its products and services to such RE/MAX affiliates;

i. Advertise Quicken Loans on RE/MAX's broker and agent extranet website that enables RE/MAX affiliates to access the Quicken Loans website to obtain information Quicken Loans' products and services;

j. Provide a Designated Representative to work with Quicken Loans;

k. Provide a monthly report of the previous month's listing volume and sales volume in the RE/MAX company-owned regions (regional territories in which RE/MAX directly sells franchises to operate real estate brokerages, as opposed to independent regions in which the right to sell RE/MAX franchisees is held, under agreement from RE/MAX, by an independent regional sub-franchisor); and

l. Good faith efforts to:

- implement Pixel Placement on RE/MAX's website, remax.com;

- implement on remax.com the ability for visitors to the site to request information on pre-approval from Quicken Loans;

- implement digital Quicken Loans ad placements or attributions on RE/MAX's current mobile applications; and

5

- implement Quicken Loans sponsored listing videos on remax.com.

These services are further detailed in Exhibit E to the Agreement and within the Amendment.

11. RE/MAX has provided to Quicken Loans all the services and opportunities set forth in paragraph 9 above, and more. Quicken Loans has reaped the full benefit of the marketing and promotion provided to it by RE/MAX.

12. Conversely, Quicken Loans made numerous misrepresentations to RE/MAX during the course of the parties' relationship and failed to provide, as promised, key technologies and resources to RE/MAX to assist RE/MAX in fulfilling its obligations.

13. In the Agreement, Quicken Loans represented and warranted to RE/MAX that, as of the effective date of the Agreement and throughout the term of the Agreement:

> The Marketing Fees [payable by Quicken Loans] are reasonably related to the fair market value of the goods and services to be provided by RE/MAX under this Agreement, that payment of the Marketing Fees under this Agreement does not represent payment of a fee, kickback or other thing of value for mere referral of settlement services, that the payment of the Marketing Fees will not result in higher rates, points, or closing costs for customers of Quicken Loans, and that the payment of the Marketing Fees complies with all applicable law.

14. RE/MAX invoiced Quicken Loans for services performed during the months October-December 2015 and January-April 2016, and Quicken Loans paid those invoices. RE/MAX invoiced Quicken Loans for services performed in May, June, and July 2016. Although payment of those invoices became due and payable, Quicken Loans did not pay them, despite the substantial benefit it received during these months through the services and opportunities provided by RE/MAX.

Specifically, the following invoices are currently due and unpaid:

| Fee | Invoice Date | Invoice Amount | Due Date |
|---|---|---|---|
| Monthly Marketing Fee for May, 2016 | 06/06/2016 | $325,000 | 06/30/2016 |
| Monthly Marketing Fee for June, 2016 | 06/30/2016 | $325,000 | 07/30/2016 |
| Monthly Marketing Fee for July, 2016 | 07/28/2016 | $325,000 | 08/30/2016 |

15.  RE/MAX also invoiced Quicken Loans for costs incurred pursuant to the Agreement in relation to receptions Quicken Loans hosted at trainings for RE/MAX Affiliates. Quicken Loans paid such an invoice in April 2016, but then did not pay similar invoices for May through July 2016, despite the substantial benefit Quicken Loans received from these opportunities and despite Quicken Loans having induced RE/MAX to incur these costs in reliance on the Agreement. Specifically, the following invoices are due and unpaid:

| Fee | Invoice Date | Invoice Amount | Due Date |
|---|---|---|---|
| Quicken Loans 101 Reception for May, 2016 | 05/04/2016 | $36.74 | 05/31/2016 |
| Quicken Loans 101 Reception for June, 2016 | 06/29/2016 | $45.22 | 06/30/2016 |
| Quicken Loans 101 Reception for July, 2016 | 07/27/2016 | $554.35 | 07/31/2016 |

16.  On September 2, 2016, RE/MAX, pursuant to the Agreement, provided Notice to Quicken Loans that Quicken Loans was in material breach of the Agreement for failing to pay the above monthly marketing fees.

17.  On September 7, 2016, Quicken Loans filed a preemptive lawsuit against RE/MAX in the Eastern District of Michigan, to circumvent the exclusive Colorado forum selection clause in the Agreement (the "Michigan Lawsuit").

18. As of September 15, 2016, more than ten days had passed since service of the Notice, and Quicken Loans' material breach of the Agreement continued during that period of time. Accordingly, an Event of Default pursuant to the Agreement occurred and, under the terms of the Agreement, RE/MAX was entitled to immediately terminate the Agreement upon written notice to Quicken Loans and to seek all other remedies available to RE/MAX.

19. Also on September 15, 2016, RE/MAX filed its Defendant's Motion for Transfer of Venue in the Michigan Lawsuit.

20. On September 16, 2016, RE/MAX notified Quicken Loans of RE/MAX's termination of the Agreement, effectively terminating the Agreement pursuant to the terms thereof.

21. The invoices referenced in paragraph 13 above remain unpaid as of the date of this Complaint.

22. RE/MAX invoiced Quicken Loans for services performed in August 2016 and September 1 through 15, 2016, as well as for Quicken Loans' participation at the annual RE/MAX summer conference for RE/MAX broker/owners and managers. These invoices became due and Quicken Loans did not pay them, despite the substantial benefit it received through services and opportunities provided by RE/MAX.

| **Fee** | **Invoice Date** | **Invoice Amount** | **Due Date** |
| --- | --- | --- | --- |
| Monthly Marketing Fee for August, 2016 | 09/01/2016 | $325,000 | 09/30/2016 |
| Broker Owner Annual Conference Fee | 08/18/2016 | $150,000 | 09/30/2016 |
| Monthly Marketing Fee for September 1-15, 2016 | 09/20/2016 | $162,500 | 10/30/2016 |

The non-payment of these invoices constitutes additional Events of Default and breaches of the Agreement.

8

23. Quicken Loans' breach of the Agreement has caused and will cause RE/MAX injury and damages in an amount to be proven at trial.

24. In addition, Quicken Loans likely used Confidential Information it received pursuant to the NDA for purposes other than the Purpose of the Disclosure described in Paragraph 7 above. Specifically, Quicken Loans appears to have used lists of RE/MAX Affiliates (which were provided to Quicken Loans pursuant to the Agreement and NDA) to assist In House Realty ("IHR"). IHR is a company owned by the same parent entity as Quicken Loans that holds itself out as "the preferred real estate partner of Quicken Loans" and seeks to "pair [home buyers] with a top-rated agent in [their] area to find [the] perfect home today." Use of RE/MAX's Confidential Information to assist IHR violates the NDA and, thereby, violates the Agreement.

25. The structure of Quicken Loans' relationship with IHR allows Quicken Loans to profit from its improper use of RE/MAX's Confidential Information and otherwise damages RE/MAX.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

26. RE/MAX hereby incorporates by reference all allegations set forth above as if fully set forth herein.

27. RE/MAX and Quicken Loans entered into a binding agreement.

28. The Agreement was valid and enforceable and was a contract.

29. Quicken Loans has breached the Agreement by, among other things, failing and refusing to pay the amounts due under the Agreement and by violating the NDA.

30. RE/MAX has in all ways fulfilled its obligations pursuant to the Agreement and the Amendment.

31. Quicken Loans' breaches of the Agreement have caused and will cause RE/MAX injury and damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

32. RE/MAX hereby incorporates by reference all allegations set forth above as if fully set forth herein.

33. In all contracts there exists an implied covenant of good faith and fair dealing.

34. The Agreement and Amendment contained an implied covenant of good faith and fair dealing.

35. By its conduct described above, Quicken Loans breached the implied covenant of good faith and fair dealing in the Agreement and Amendment.

36. Quicken Loans' breach of the implied covenant of good faith and fair dealing has caused and will cause RE/MAX injury and damage in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (In the Alternative, Unjust Enrichment)

37. RE/MAX hereby incorporates by reference all allegations set forth above as if fully set forth herein.

38. Quicken Loans accepted and received the benefit of services and information that RE/MAX provided it.

39. Although Quicken Loans received the benefit of RE/MAX's services and information, Quicken Loans has failed to fully pay or otherwise fully compensate RE/MAX.

10

40. Quicken Loans' failure to fully pay or otherwise fully compensate RE/MAX for its services and information has resulted in Quicken Loans' unjust enrichment, to RE/MAX's detriment.

41. Quicken Loans' unjust enrichment has caused and will cause RE/MAX injury and damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, RE/MAX requests the following relief:

1. A determination by the jury that the Agreement has been lawfully terminated by RE/MAX;

2. Compensatory damages, including lost profits, to be determined at trial;

3. Pre- and post-judgment interest;

4. Costs and attorneys' fees; and

5. Such other and further relief as the Court may deem proper and just.

## JURY DEMAND

RE/MAX hereby demands a jury as to all claims and issues so triable.

Dated: January 13, 2017.

                                      DAVIS GRAHAM & STUBBS LLP

                                      */s/ Benjamin B. Strawn*
Thomas P. Johnson, CO Reg. #13099
Benjamin B. Strawn, CO Reg. #44631
John M. Bowlin, CO Reg. #42276
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: tom.johnson@dgslaw.com
Email: ben.strawn@dgslaw.com
Email: john.bowlin@dgslaw.com

*Attorneys for Plaintiff RE/MAX, LLC*

Plaintiff's address:

5075 South Syracuse Street
Denver, Colorado 80237

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January 2017, a true and correct copy of the foregoing **AMENDED COMPLAINT** was served via ECF on each of the following:

David G. Palmer
Troy A. Eid
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, CO  80202
palmerd@gtlaw.com
eidt@gtlaw.com

Peter S. Wahby
Kimberly D. Annello
Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX  75201
wahbyp@gtlaw.com
annellok@gtlaw.com

Jeffrey B. Morganroth
Morganroth & Morganroth PLLC
344 N. Old Woodward Ave., Suite 200
Birmingham, MI  48009-5310
jmorganroth@morganrothlaw.com

*Attorneys for Plaintiff and Counter-Claim Defendant Quicken Loans Inc.*

> */s/ Linda Browne*
> Linda Browne

13