# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02357-PAB-MJW

RE/MAX, LLC,

        Plaintiff,

v.

QUICKEN LOANS INC.,

        Defendant.

---

## SCHEDULING ORDER

---

### 1.    DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The Scheduling / Planning Conference occurred on November 3̶0̶ 22, 2016 at 10:30 a.m. Representing Plaintiff is:

> Thomas P. Johnson
> DAVIS GRAHAM & STUBBS LLP
> 1550 17th Street, Suite 500
> Denver, CO 80202
> Telephone: (303) 892-9400

Representing Defendant is:

> David G. Palmer
> Troy A. Eid
> GREENBERG TRAURIG, LLP
> 1200 17th Street, Suite 2400
> Denver, CO 80202
> Telephone: (303) 572-6500

Peter S. Wahby
Kimberly D. Annello
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH PLLC
344 N. Old Woodward Ave., Suite 200
Birmingham, MI 48009-5310
Telephone: (248) 864-4000

## 2. STATEMENT OF JURISDICTION

Jurisdiction is proper in this matter pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the Plaintiff and the Defendant, and the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a. Plaintiff:

This lawsuit arises from a Strategic Marketing Alliance Agreement (the "Agreement") between RE/MAX, LLC ("RE/MAX") and Quicken Loans Inc. ("Quicken Loans") executed on July 9-10, 2015. The Agreement was a co-branding and marketing arrangement, in exchange for which Quicken Loans was to pay RE/MAX certain monthly and annual flat fees. The Agreement set forth the specifics of the marketing program RE/MAX was obligated to deliver, and contained the following representations and warranties by Quicken Loans:

> The Marketing Fees are reasonably related to the fair market value of the goods and services to be provided by RE/MAX under this Agreement, that payment of the Marketing Fees under this Agreement does not represent payment of a fee, kickback or other thing of value for mere referral of settlement services, that the payment of the Marketing Fees will not result in higher rates, points, or closing costs for customers of Quicken Loans, and that the payment of the Marketing Fees complies with all applicable law.

RE/MAX made no comparable representations or warranties as to the value of the goods and services it was to provide under the Agreement.

Shortly after the Agreement was executed, Quicken Loans, despite its representations and warranties, began complaining that it was not receiving sufficient value for the marketing fees it was paying. In response, although under no obligation to do so, RE/MAX agreed to a November 10, 2015 Amendment by which RE/MAX agreed to provide additional marketing services to Quicken Loans for no additional fee. Quicken Loans continued to assert that RE/MAX's marketing efforts, which fully complied with the Agreement and the Amendment, were over-valued and persistently demanded a reduction of fees. RE/MAX accommodated all of Quicken Loans' requests for adjustments in the services provided, even those beyond the scope of the Agreement and Amendment, but properly declined to lower the negotiated monthly and annual fees. Beginning in June 2016, Quicken Loans ceased paying any of RE/MAX's invoices, despite RE/MAX's continued performance of its obligations.

On August 22, 2016, RE/MAX's President and Intellectual Technology team traveled to Quicken Loans' headquarters and made a PowerPoint presentation establishing the substantial and increasing value to Quicken Loans of RE/MAX's

marketing efforts. Quicken Loans' response was to file a lawsuit in the Eastern District of Michigan, despite an exclusive and mandatory venue selection clause in the Agreement dictating Colorado as the only appropriate venue for the resolution of disputes. RE/MAX then terminated the Agreement and filed this lawsuit in Colorado, the correct venue, seeking payment of its unpaid invoices.

RE/MAX's claims in this lawsuit are straightforward. They seek payment of the invoices Quicken Loans refused to pay for RE/MAX's marketing efforts in May-August, 2016. The specific claims are as follows: Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing and Unjust Enrichment. The claims will be amended to include unpaid invoices through September 16, 2016, the date the Agreement was terminated. RE/MAX also seeks to recover its lost profits as a result of Quicken Loans' defaults under the Agreement and the resulting termination.

The lawsuit that Quicken Loans improperly filed in the Eastern District of Michigan has been transferred to this District and bears the caption, *Quicken Loans Inc. v. RE/MAX, LLC*, Civil Action No. 1:16-cv-02696-RM-NYW. RE/MAX has filed a Motion to Consolidate, Stay or Dismiss that Lawsuit. Quicken Loans has filed a Motion to Dismiss or in the Alternative, Motion to Stay the Proceedings in this lawsuit. That motion is fully briefed.

    b.    Defendant:

In the summer of 2015, RE/MAX approached Quicken Loans regarding a potential marketing alliance. On July 9, 2015, Quicken Loans and RE/MAX entered into the Agreement, by which RE/MAX agreed to provide specific services to Quicken

Loans, namely: (a) certain web-based advertising; (b) mortgage tools advertising; (c) intranet advertising; (d) affiliate training; (e) print advertising; (f) event participation; and (g) the promotion of Quicken Loans to RE/MAX franchisees and affiliates. Shortly after the parties executed the Agreement, certain regulatory changes occurred in the Real Estate Settlement Procedures Act (RESPA) and related federal interpretations were issued, all of which impacted the legality and viability of the Agreement.

Given this dynamic legal landscape, in September 2015, Quicken Loans secured a valuation from an independent third party, which revealed RE/MAX's material overvaluation of the Agreement and determined that it was worth approximately half the value that RE/MAX had claimed. When Quicken Loans disclosed the results of this valuation, RE/MAX responded by making additional representations to Quicken Loans to support the value provided in the Agreement.

Before the parties ever performed under the terms of the Agreement, Quicken Loans sought an amendment in an effort to cure aspects of the Agreement that appeared to conflict with the Consumer Finance Protection Bureau's new enforcement approach to RESPA and additional regulatory interpretations. The Agreement contained a "Change in Law" provision that specifically contemplated that the parties would renegotiate and restructure the Agreement to address changes in applicable laws or regulations. On November 10, 2015, the parties entered into the First Amendment to the Agreement.

Over the first six months of the Agreement's and the Amendment's implementation, Quicken Loans paid RE/MAX more than $2.3 million. But RE/MAX

failed to perform in a manner consistent with the Agreement, the Amendment and its representations to Quicken Loans. On June 17, 2016, Quicken Loans sent a notice to RE/MAX requesting that it cure certain defaults under the Agreement. Instead of curing, RE/MAX continued to negotiate with Quicken Loans, only to send its own contrived notice of default almost three months later. It became apparent to Quicken Loans that RE/MAX knew the value levels and scope of the marketing services it had represented to Quicken Loans, including those set forth in a related spreadsheet from RE/MAX, were false, and that RE/MAX knew it had no ability to provide marketing services at these levels. Quicken Loans believes RE/MAX made the representations to justify its fee and induce Quicken Loans to think that the Agreement complied with RESPA when it did not. Quicken Loans has also learned that RE/MAX was focusing its efforts on establishing its own competing mortgage lending franchise, Motto Mortgage, rather than fulfilling its obligations under the Agreement.

After it became clear that RE/MAX had no intention of performing under the Agreement, Amendment, or its representations, Quicken Loans filed a Complaint in the U.S. District Court for the Eastern District of Michigan asserting claims for (1) declaratory judgment that the Agreement is void, (2) fraudulent inducement, (3) unjust enrichment, (4) promissory estoppel, and, in the alternative, (5) breach of the Agreement (the "Quicken Loans Complaint"). RE/MAX answered the Complaint and filed counterclaims on September 28, 2016.

RE/MAX moved to transfer the Quicken Loans Complaint to the U.S. District Court for the District of Colorado, based on a forum selection provision in the

6

Agreement. Quicken Loans opposed that motion citing another provision in the Agreement identifying Michigan courts as a potential forum. While the transfer motion was pending, but almost two weeks after Quicken Loans had filed its Complaint, RE/MAX filed this Complaint in Colorado covering the same subject matter and course of events ("RE/MAX Complaint"). RE/MAX replead, verbatim, all of the allegations in its RE/MAX Complaint as its counterclaims to the Quicken Loans' Complaint pending in the Michigan Court. The Quicken Loans Complaint was transferred to the District of Colorado on October 31, 2016 and is pending before District Court Judge Raymond Moore and U.S. Magistrate Judge Nina Wang as Case No. 1:16-cv-02696-RM-NYW ("Quicken Loans Action"). Both parties have filed notices of related case. RE/MAX has moved to consolidate both cases.

Simply put, RE/MAX now has virtually identical claims pending against Quicken Loans in two separate cases in the District of Colorado. Quicken Loans has moved to dismiss the RE/MAX Complaint as duplicative of the Quicken Loans Action in order to preserve judicial economy, avoid wasting resources and eliminate the possibility of inconsistent results. Since the Quicken Loans Action was filed first, and RE/MAX's claims are already pending as counterclaims there, the Quicken Loans Action should proceed and this action should be dismissed. Quicken Loans' motion to dismiss RE/MAX's Complaint was fully briefed to this Court as of November 21, 2016. RE/MAX's Motion to Consolidate, filed in the Quicken Loans Action, is still being briefed before Magistrate Wang.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. The Agreement was executed by RE/MAX and Quicken Loans on or about July 9 and 10, 2015.

2. By its terms, the Agreement did not become effective until October 15, 2015.

3. The Amendment was executed by RE/MAX and Quicken Loans on or about November 15, 2015.

4. RE/MAX invoiced Quicken Loans for services performed pursuant to the Agreement during the months of October - December 2015 and January - April 2016, and Quicken Loans paid those invoices in the approximate amount of $2,300,000.

5. RE/MAX has sent and Quicken Loans has received the following invoices:

| Fee | Invoice Date | Invoice Amount | Due Date |
|---|---|---|---|
| Monthly Marketing Fee for May, 2016 | 06/06/2016 | $325,000 | 06/30/2016 |
| Monthly Marketing Fee for June, 2016 | 06/30/2016 | $325,000 | 07/30/2016 |
| Monthly Marketing Fee for July, 2016 | 07/28/2016 | $325,000 | 08/30/2016 |
| Monthly Marketing Fee for August, 2016 | 09/01/2016 | $325,000 | 09/30/2016 |
| Monthly Marketing Fee for September 1-15, 2016 | 09/20/2016 | $162,500 | 10/30/2016 |
| Broker Owner Annual Conference Fee | 08/18/2016 | $150,000 | 09/30/2016 |

## 5. COMPUTATION OF DAMAGES

RE/MAX seeks the sum of $1,612,500 plus interest, plus lost profits in an amount as yet undetermined, plus attorneys' fees and costs as appropriate.

8

Quicken Loans seeks the return of the approximately $2,300,000 it paid to RE/MAX plus interest, plus additional damages resulting from RE/MAX 's tortious acts in an amount to be determined, plus attorneys' fees and costs to be determined.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. Date of Rule 26(f) meeting: November 9, 2016.

b. Names of each participant and party he/she represented: Tom Johnson and John Bowlin represented RE/MAX. Jeff Morganroth, David Palmer, Peter Wahby, and Kimberly Annello represented Quicken Loans.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made: November 23, 2016.

d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1): None.

e. Statement concerning any agreements to conduct informal discovery: None at this time.

f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system: The parties will consider using a unified exhibit numbering system. The parties also will consider using video conferencing for some out-of-town depositions.

g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form: The parties do not anticipate exchanging an unusual amount of

9

electronically stored information ("ESI"). The parties have issued litigation hold letters to preserve ESI, and have agreed that ESI will be produced in .tiff and .txt files with load files, unless they encounter special file types that will require some other format. Such issues will be addressed as they arise.

h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case: The parties have had several discussions regarding settlement and will continue to discuss settlement as circumstances warrant.

### 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

a. The parties agree to limit all depositions to a maximum of 7 hours in one day of actual deposition time. ~~The parties propose to limit the number of depositions to~~ ~~12~~ /Depositions/ per side, excluding expert depositions.

b. The parties agree to limit written discovery as follows:

— 25 Interrogatories per side without of Court

~~Plaintiff:~~
~~Interrogatories: 25 per side.~~
~~Requests for production: 25 per side.~~
~~Requests for admission: 10 per side plus 15 per side, the latter solely~~ for ~~document authentication.~~

~~Defendant:~~
~~Interrogatories: 25 per side including sub-~~parts
~~Requests for production: No limit~~
~~Requests for admission: No limit~~

— 30 Request For Production and Request For Admission per side without leave of Court.

10

    c.    Other Planning or Discovery Orders: The parties will submit a Protective Order to the Court on or before ~~November 30~~ *December 7*, 2016.

### 9. CASE PLAN AND SCHEDULE

    a.    Deadline for Joinder of Parties and Amendment of Pleadings: January 13, 2017

    b.    Fact discovery cut-off: June 30, 2017

    c.    Dispositive Motion Deadline: October 31, 2017

    d.    Expert Witness Disclosure

        1.    Anticipated fields of expert testimony:

**Plaintiff:**
- a. RESPA;
- b. Valuation of services and opportunities provided to Quicken Loans by RE/MAX;
- c. Damages, offsets and loss mitigation.

**Defendant:**
- a. RESPA;
- b. Valuation of services and opportunities provided to Quicken Loans by RE/MAX;
- c. Liability/failure to perform;
- d. Analysis of systems and processes of Motto Mortgage;
- e. Damages, offsets and loss mitigation.

        2.    Limitations which the parties propose on the use or number of expert witnesses: *5 Experts per side*

**Plaintiff:** ~~The parties will use no more than 4 expert witnesses per side.~~

**Defendant:** ~~The parties will use no more than 5 expert witnesses per side.~~

11

3, 4. Each party shall designate its expert(s) on the topics of RESPA and valuation of services and opportunities provided to Quicken Loans by RE/MAX, and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(1), on or before July 31, 2017. The parties shall designate all experts who will submit opinion testimony solely to rebut the opinions of the above experts, and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(1), on August 31, 2017.

Quicken Loans shall designate its experts on the topics of liability/failure to perform and analysis of systems and processes of Motto-Mortgage, and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(1), on July 31, 2017. RE/MAX shall designate all experts who will submit opinion testimony solely to rebut the opinions of the above experts, and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(1), on August 31, 2017.

Each party shall designate its expert(s) on the topic of its own damages, offsets, and loss mitigation, and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(1), on July 31, 2017. The parties shall designate all experts who will submit opinion testimony solely to rebut the opinions of the above

experts, and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(1), on August 31, 2017.

The parties reserve their respective rights to object to any topic of expert testimony and/or to any expert designated.

    5.    Close of expert discovery: September 30, 2017

e.    Identification of Persons to Be Deposed:

**Plaintiff:** Plaintiff will depose Derek Latka and Jay Farner each for no more than 7 hours in one day of actual deposition time. Plaintiff will depose other Quicken Loans officers and/or employees involved in the negotiation/performance of the Agreement, as disclosed during discovery, also for no more than 7 hours in one day of actual deposition time.

**Defendant:** Defendant will depose Michael Ryan, David Garland, Jeb Griffin, Ward Morrision, Geoff Lewis and David Liniger, each for no more than 7 hours in one day of actual deposition time. Defendant will depose other RE/MAX officers and/or employees involved in the negotiation/performance of the Agreement, as disclosed during discovery, also for no more than 7 hours in one day of actual deposition time. Defendant will depose agents, officers and/or employees of Motto Mortgage, also for no more than 7 hours in one day of actual deposition time.

f.    Deadline for Submission of Interrogatories: May 26, 2017

~~**Plaintiff:**~~ ~~April 30, 2017~~

~~**Defendant:**~~ ~~May 31, 2017~~

13

    g.    Deadline for Submission of Requests for Production of Documents

and/or Admissions: *May 26, 2017*

~~Plaintiff:~~ ~~April 30, 2017~~

~~Defendant:~~ ~~May 31, 2017~~

## 10. DATES FOR FURTHER CONFERENCES

*[The magistrate judge will complete this section at the scheduling conference if he or she has not already set deadlines by an order filed before the conference.]*

    a.    Status conferences will be held in this case at the following dates and times: ~~None~~. *February 9, 2017 at 9:00 AM Update on Discovery and need to set PTC*

    b.    A final pretrial conference will be held in this case on _____ at

o'clock _____ m. A Final Pretrial Order shall be prepared by the parties and submitted

to the court no later than seven (7) days before the final pretrial conference. *No Final Pretrial Conference set at this Time*

## 11. OTHER SCHEDULING MATTERS

    a.    Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: None.

    b.    Anticipated length of trial and whether trial is to the court or jury:

~~Plaintiff:~~ ~~10 trial days to a jury~~

~~Defendant:~~ ~~10-13 trial days to a jury~~

*13 Trial Days to a Jury*

    c.    Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-

14

2520; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado 81303-3439: None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 30th day of November, 2016.

BY THE COURT:

MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE
DISTRICT OF COLORADO

15

APPROVED:

s/ Thomas P. Johnson
Thomas P. Johnson
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400

Attorneys for Plaintiff RE/MAX, LLC

s/ David G. Palmer
David G. Palmer
Troy A. Eid
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
Telephone: (303) 572-6500

Peter S. Wahby
Kimberly D. Annello
Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Jeffrey B. Morganroth
Morganroth & Morganroth PLLC
344 N. Old Woodward Ave., Suite 200
Birmingham, MI 48009-5310
Telephone: (248) 864-4000

Attorneys for Defendant Quicken Loans Inc.